UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
JOHN WILEY & SONS, INC.,

                Plaintiff,

                v.

DRK PHOTO, a sole proprietorship,

                Defendant.

--------------------------------------------------------------
DRK PHOTO, a sole proprietorship,

                Counterclaimant,

                v.

JOHN WILEY & SONS, INC.

                Counterdefendant.

--------------------------------------------------------------

1:11-CV-05454-KPF

ECF Case

## SECOND DECLARATION OF DANIEL KRASEMANN

I, Daniel Krasemann, hereby declare pursuant to 28 U.S.C. § 1746:

1. I have owned and operated DRK Photo ("DRK"), the Defendant and Counterclaimant in the above-entitled matter, as a sole proprietorship since 1981. I have personal knowledge of the matters set forth herein.

2. DRK is a Sedona, Arizona stock photography agency engaged in licensing photographic images to publishers, including John Wiley & Sons, Inc. ("Wiley"), as well as other clients.

3. DRK owns the photographs identified in Exhibit A to this motion. Thumbnail images of the Photographs appear in Exhibit A to this motion.

4. DRK has, by assignment, the sole right to bring and resolve accrued and later accruing claims pertaining to the Photographs in the publications identified in Exhibit A. The assignments were submitted to the Court with Doc. 54, Declaration of Robert Penchina ("Penchina Decl.") Exhibit 13, and as Exhibit 2 to Doc. 67, the First Declaration of Daniel Krasemann ("1st Krasemann Decl.").

5. DRK's photographs are registered with the United States Copyright Office. The registration certificates for the photographs identified in Exhibit A are attached as Exhibit 1 hereto.

6. Between 1997 and 2009, DRK received requests from Wiley seeking permission to use copies of DRK's photographs in its textbooks.

7. Wiley's requests typically included a maximum number of copies for each publication. DRK based its license fees in part on this maximum print run number. When DRK grants licenses for a specific print run, the license does not permit the licensee to print more copies than the limited print run number.

8. Wiley's requests also typically sought specific geographic distribution rights (*i.e.* United States, Canada, North America, or World). When DRK grants licenses for specific geographic distribution areas, the license does not permit distribution of DRK's photographs beyond the area(s) listed.

9. Some of Wiley's requests included use in electronic media formats. DRK charges different fees for use of its images in electronic media. If a licensee wants to reproduce DRK's works in e-book format, it must request such use, and pay an additional fee. Wiley is aware of this requirement, and has sought and paid for electronic and e-book uses for some of its publications. If electronic or e-book rights are granted, that grant is noted explicitly on DRK's

invoice.  Invoices that do not specifically provide for electronic or e-book uses do not include a license for such use.

10. In response to Wiley's requests, DRK issued limited licenses for the use of its images, in the form of written invoices.  The invoices relevant to this motion for summary judgment are attached hereto as Exhibit 2 (split into parts 1-2 due to file size restrictions).

11. Each of the licenses granted to Wiley contain firm and clear limitations on the authorized uses of DRK's photographs.  DRK's invoices to Wiley state, on the front in a highlighted box, "Rights granted:  One-time, non exclusive reproduction rights to the photographs listed below, solely for the uses and specifications indicated, and limited to the individual edition, volume series, show, event or the like contemplated for this specific transaction (unless otherwise indicated in writing)."  Exhibit 2, *see, e.g.,* Invoice 005443, Bates No. DRK v. Wiley AAA 00121.

12. When I looked in DRK's paper files for Invoices 006933 and 006934, I was not able to locate the original invoices, and had to re-produce them in discovery without the entire form on which they were originally printed.  The invoices that Wiley received were on the same form, and contained the exact same terms, as the others in Exhibit 2.  *Id*., Bates Nos. DRK v. Wiley AAA 00150, 00155.

13. The grant of specific rights is also expressly limited on each invoice.  On Invoice 005443, for example, in the portion of the invoice that specifies the "Media Usage and Type of Use Allowed," DRK specified "No other rights granted or implied.  No electronic publishing rights granted." *Id*.

14. Wiley's payment of the license fees set forth in DRK's invoices and subsequent use of the Photographs demonstrate its acceptance of the license terms.

15. DRK trusted and expected that Wiley would comply with the license limits or seek license renewals as needed. Neither any DRK employee nor I had any conversations with Wiley or its agents about the licenses that would have changed their final, written terms.

16. Wiley never sought a license renewal or permission from DRK to use its photographs beyond the scope the licenses attached hereto provided for, nor did DRK authorize Wiley to use its Photographs beyond the explicit uses granted in each license.

17. The number of copies ("print run"), the geographic distribution area, and the media needed (print or electronic) are all factors that influence the price of the licenses DRK granted Wiley. Because DRK relied upon the misrepresentations in the license requests regarding the limited print runs, DRK was damaged because it was not able to charge a fair price for the licenses.

18. I have been involved on a full-time basis in the business of licensing photography, for over 30 years. I am familiar with photography licensing practices in the textbook industry, having licensed works to Pearson Education, Inc., Houghton Mifflin Harcourt Publishing Company, McGraw, The McGraw-Hill Companies, and many others.

19. DRK and Wiley did not have any "course of dealing" that gave Wiley permission to exceed license limits first and pay later. The terms and conditions printed on the reverse of some of DRK's later licenses state, "Upon submission of and payment of an invoice to DRK PHOTO a license is only granted to use the images for the use specified on the invoice and for no other purpose, unless such images are purchased outright . . . . If Recipient desires to re-use an image or extend previous usage, then Recipient must request and pay for additional rights *prior to publication*." Exhibit 2, Invoice 9040, Bates No. DRK v. Wiley AAA 00239, 00245 (under "Terms as to Use") (emphasis added). These terms are also included on Invoices 8795, 9243,

and 9523.

20.     DRK and Wiley also did not have an agreement that any use by Wiley that exceeded license limitations was not considered copyright infringement.  These same later invoices indicate DRK's understanding:

> In the event you utilize an image for any use other than that indicated on the invoice, including but not limited to the number of uses, the publication using, or the size of reproduction, DRK PHOTO agrees to forego its right to sue *for copyright infringement* and breach of contract if you pay, as liquidated damages, a sum equal to ten (10) times the maximum price we would have charged for such use, within ten (10) days of our billing such fee.  This is not a penalty but an agreed fair use charge.  If you fail to make such payment in ten (10) days, we shall have the right to sue for copyright infringement and breach of contract.

*Id.*  (emphasis added).

21.     DRK did not authorize Wiley to use the Photographs beyond the explicit uses granted in each license, unless Wiley expressly requested and paid for additional uses.

22.     The stock photography business is based on trust between the licensors and the publishers.  DRK and its photographers have no means of knowing Wiley's actual uses of images unless Wiley provides that information, which it does not voluntarily do.

23.     Because Wiley either received digital copies of DRK's images from DRK, or created digital copies from DRK's photo transparencies, when it paid for limited licenses, it can later easily use them in unlicensed editions, languages, and regions, or even entirely new publications without DRK's knowledge or consent.

24.     To this day, even since Wiley filed suit for copyright infringement, Wiley has not fully disclosed its uses of DRK's photographs.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Daniel Krasemann

DATE: 6-14-2013