# *John Wiley & Sons, Inc. v. DRK Photo*
Case No. 1:11-cv-05454 (KPF)

## Supplemental Declaration of Robert Penchina
In Support of Motion for Summary Judgment

# Exhibit A

**AMERICAN ARBITRATION ASSOCIATION**
Arizona

| | |
|---|---|
| *In Re:*<br>DRK Photo,<br>    Claimant,<br>*and*<br>John Wiley & Sons, Inc.,<br>    Respondent. | AAA # No. **76 143 00193 11** |

**CLAIMANT DRK PHOTO'S RESPONSE MEMORANDUM OPPOSITION TO RESPONDENT JOHN WILEY & SONS, INC.'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Arbitrator's August 21, 2012 Third Amended Scheduling Order, Claimant DRK Photo ("DRK Photo" or "DRK") submits this memorandum opposing Respondent Wiley & Sons, Inc. ("Wiley")'s Motion for Summary Judgment, submitted on August 14, 2012.

## INTRODUCTION

Wiley's motion for summary judgment is based primarily on a misreading of the law, and supported by cherry-picked excerpts from Dan Krasemann's testimony, purposefully taken out of context.[1] Though Wiley seeks to minimize its culpability by claiming that DRK's damages are small, the fact remains that Wiley committed copyright infringement and fraud, and it is liable to DRK for those acts. Wiley is only entitled to summary judgment if it can show that there are no

---

[1] For example, Dan Krasemann <u>did not</u> say his fraud allegations were an exaggeration. *See* Exhibit A to the Declaration of Amanda Bruss ("Bruss Decl."), relevant excerpts from the deposition of Dan Krasemann ("Krasemann Depo.") at 57:20 – 58:10. The Amended Arbitration Demand ("Demand") claims that Wiley's infringements *extended beyond those committed against DRK*, and that they numbered in the thousands. During Dan Krasemann's deposition, Wiley's counsel asked if Wiley had infringed thousands of DRK licenses, intentionally misreading the language of the Demand. Mr. Krasemann confirmed that, *if applied to DRK alone*, that statement would be an exaggeration. Wiley is, however, defending numerous parallel infringement suits, based on the same conduct alleged here, and has in fact already been found a copyright infringer in an Arizona district court case. *See Bean v. John Wiley & Sons, Inc.*, No. CV-11-08028-PCT-FJM, 2012 WL 1078662 (D.Ariz. March 30, 2012).

suit appear in the deposits. Wiley's claim that the deposit copy it got from the Copyright office for Registration No. VAu 175-200 looks nothing like "Aerial Permafrost Polygon photo" is groundless. As reflected in the copy of that deposit Wiley submitted with its brief, *none* of the images in the deposit are recognizable.[43] When the original black and white photocopy was created back in 1990, it was made by laying a plastic sheet containing slides on a copy machine. The light from the copier reflecting off of the plastic sheet and the plastic surface of the slides caused the image to distort. This effect can be seen in many of the other slides in the deposit, especially those on the edge of the sheet.[44] Because of the poor copy quality, it is impossible to confirm by visual inspection of the deposit which images were included, except by reference to the image ID numbers on the slide mounts. The slide mount containing Image No. 1s901854 is clearly recognizable in the deposit, confirming that the photograph in the Amended Demand is covered by Registration No. VAu 175-200.

Before filing its motion for summary judgment, Wiley did not move to compel production of the deposits, make any meet-and-confer request for the deposits, or bring to the Arbitrator's attention any issue relating to the deposits. Wiley's approach of "lying in the weeds," and then demanding dismissal of claims where it has not been prejudiced, is inconsistent with the arbitration process.

### V. DRK has standing to bring the copyright infringement claims at issue.

#### A. DRK has standing to bring its copyright claims through properly executed assignments.

DRK's standing to bring copyright infringement claims against Wiley is based on

---

[43] *See* Exhibit 10 to Wiley's Motion.
[44] Compare, for example, the slide copies 902009, 902030, 901545, 901512, 900678, 901301, and 901235 that appear in the deposit submitted by Wiley with the actual photographs, submitted as Exhibit 4 to the Declaration of Dan Krasemann.

11

its status as the current copyright owner of the Photographs, which it obtained through written assignment agreements. Wiley does not contest the fact that these agreements were freely entered into by DRK and the photographers, or that they reflect an intent to be bound by the contracting parties. That is because the evidence overwhelmingly shows that the assigning photographers wanted to convey their copyrights to DRK. Instead, Wiley claims that the assignment agreements must be a sham, because they don't contain provisions Wiley believes should be there. There is no rule requiring parties to put their entire legal relationship down on paper for an assignment to be valid. At the time the copyright assignments were executed, DRK already had the right to issue licenses to third parties, by means of the previously executed representation agreements. There is no reason why the existing agreements between DRK and the photographers would need to be reiterated in the assignments. And there is no legal requirement that a copyright owner require licensors to submit an accounting of, or even pay for, their uses. DRK has allowed the photographers who transferred ownership of their copyrights to DRK licensors to grant <u>non-exclusive</u> licenses to third parties.[45] This is typical in the stock photo business – one entity will own the copyright but allow another to issue non-exclusive licenses. Doing so does not deprive DRK of legal title to the copyrights.

The assignment documents, rather than evidencing a lack of standing as Wiley argues, show that DRK is the owner of the copyrights-in-suit and the proper plaintiff. The Copyright Act provides that "the legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."[47] "It is well settled that the owner or author of a copyright may assign his interests to another party . . . . 'An owner may also convey his interest in prosecuting accrued

---

[45] D. Krasemann Decl. ¶ 5.
[47] 17 U.S.C. § 501(b).

12

causes of action for infringement.'"[48] Numerous courts have expressed a disinclination to allow a stranger to a copyright assignment to challenge its validity as a means of escaping liability.[49] Wiley has not presented any evidence that the parties to the assignments - DRK and the photographers - did not intend to transfer all copyrights to DRK, as the assignments state.

Wiley calls the assignments a "sham"[50], but it has put forth **no evidence** supporting this assertion. Wiley argues these assignments fail under the reasoning in *Righthaven LLC v. Wolf*.[51] In that case, the parties executed both a copyright assignment and a "copyright assignment agreement." The Court found that, "when read together, the Assignment and the Copyright Assignment Agreement reveal that MediaNews Group has assigned to Righthaven the bare right to sue for infringement—no more, no less," and that the bare right to sue was not sufficient for Righthaven to have standing, since that is not an exclusive right under 17 U.S.C. § 106.[52]

The facts here are quite different from *Righthaven*. The assignment documents grant to DRK "all copyrights and complete legal title in" the photographs at issue.[53] They also transfer "all right, title and interest in any accrued or later accrued claims . . . brought to enforce copyrights . . ." in the photographs.[54] Under Arizona law, "[t]he controlling rule of contract

---

[48] *Huebbe v. Oklahoma Casting Co.*, 663 F.Supp. 2d 1196, 1205 (W.D.Okla. 2009) (*quoting Davis v. Blige*, 505 F.3d 90, 99 (2d Cir.2007) (citations omitted)).

[49] *See, e.g., Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428 (9th Cir. 1996) (upholding the validity of a written assignment executed after the actual transfer took place, adopting the reasoning in *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir.1982), which noted that where "the copyright holder appears to have little dispute with its licensee on this matter, it would be anomalous to permit a third party infringer to invoke this provision against the licensee."); *Billy–Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592–93 (7th Cir.2003); see also *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir.1995); *KMMentor, LLC v. Knowledge Management Professional Soc., Inc.*, 712 F.Supp.2d 1222, 1254 (D.Kan. 2010); *Dataworks, LLC v. Commlog, LLC*, Civil Action No. 09–CV–00528–WJM–BNB, 2011 WL 2714087 *3 (D.Colo. July 13, 2011).

[50] Wiley Motion for Summary Judgment, p. 12.

[51] 813 F. Supp. 2d 1265, 1272-73 (D. Colo. 2011) (Kane, S.D.J.).

[52] *Id*.

[53] *See* D. Krasemann Decl. Ex. 1.

[54] *Id*.

interpretation requires that the ordinary meaning of language be given to words where circumstances do not show a different meaning is applicable."[55] DRK is the owner of these copyrights, not just the bare right to sue.[56]

Judge Alsup of the Northern District of California recently rejected the same argument Wiley makes here.[57] In *Minden*, the assignments at issue granted only co-ownership of the copyrights, but were otherwise substantially similar to those here.[58] The defendant Pearson Education Inc. – another textbook publisher – argued that Minden didn't have standing because the assignments were a "bare assignment" of the right to sue.[59] Judge Alsup disagreed, explaining:

> [U]nlike in *Silvers*, Minden has *also* been assigned ownership in the copyrighted images, along with the right to sue for any accrued claims. This is precisely the situation in which *Silvers* would have allowed a copyright claim to move forward.[60]

Here, as in the *Minden* case, DRK has been assigned ownership of the copyrights, along with the

---

[55] *Chandler Med. Bldg. Partners v. Chandler Dental Group,* 175 Ariz. 273, 277, (Ct.App. 1993).

[56] *See also Minden Pictures v. Pearson Education, Inc.,* No. C 11–05385 WHA, 2012 WL 1595081 *4 (N.D.Cal. May 4, 2012) (denying textbook publisher's motion to dismiss similar copyright claims based on standing, even though assignment granted only co-ownership interest in copyrights: "Pearson argues that, under *Silvers [v. Sony Pictures Entm't, Inc.,* 402 F.3d 881 (9th Cir.2005)]*, Minden cannot bring suit merely by having been given the 'bare assignment' of the right to sue. Yet, unlike in *Silvers*, Minden has *also* been assigned ownership in the copyrighted images, along with the right to sue for any accrued claims. This is precisely the situation in which *Silvers* would have allowed a copyright claim to move forward.").

[57] *See Minden Pictures, Inc. v. Pearson Education, Inc.,* No. C 11-05385 WHA, 2012 WL 1495081 (N.D.Cal. May 4, 2012).

[58] *Id.* at *2 ("The undersigned, the sole owner of the copyrights in the undersigned's images ("the Images") selected by Minden Pictures, Inc. ("Agency") and included in its collection, hereby assigns to Agency co-ownership of all copyrights in the images. This assignment authorizes Agency, in its sole discretion, to present, litigate and settle any accrued or later accruing claims, causes of action, choses in action—which is the personal right to bring a case—or lawsuits, brought by Agency to address unauthorized uses of the Images by licensees of Agency, as if Agency were the undersigned. Agency agrees to reassign its co-ownership of the images back to the undersigned immediately upon the conclusion of any such litigation.").

[59] *Id.* at * 4.

[60] *Id.*

14

right to sue. The assignments are a valid, and DRK has standing as owner of the copyrights to sue for infringement.

Wiley also argues that, even if the assignments were valid, DRK does not currently own the rights in the photographs, because the assignment agreements state that DRK is to reassign legal title after (1) DRK has register the images with the Copyright Office, and (2) DRK has resolved all infringement claims related to the images. While the first event has occurred (the photos have indeed been registered), the second has not. As Dan Krasemann explained during his deposition, the assignments intended that DRK should resolve all accrued and future claims – no automatic reversion was ever contemplated by the contracting parties. DRK and the photographers involved all agree that the assignments are still in effect. When DRK became aware that Wiley was going to try to argue that the copyrights had been assigned back, the photographers confirmed in writing their desire that the assignment remain in effect.[61] For example, on June 1, 2012, Michael Fogden wrote,

> Dear Dan
> Our 2008 Copyright Assignment, Registration, and Accrued Causes of Action Agreement is still in effect. There has been no assignment back to me of copyrights so DRK still has authority to bring copyright infringement claims on my behalf. I hope, therefore, you will continue to pursue and resolve claims for unauthorised uses of any of my photographs licensed by DRK.
>
> Regards,
> Michael[62]

Contrary to demonstrating the assignments are merely a "sham," this correspondence highlights the contracting parties' intent to transfer all rights necessary for DRK to bring the claims in suit,

---

[61] *See* D. Krasemann Decl., ¶14, Exhibit 5.
[62] *See* D. Krasemann Decl., Exhibit 5, Page 8.

15

and their intent that DRK retain ownership of the copyrights.[63]

### B. Stephen Krasemann's assignment to DRK is valid and enforceable.

Wiley claims that DRK does not have standing to bring claims for infringement of the photographs Stephen Krasemann registered with the copyright office.[64] In making this argument, Wiley attempts to read language into the written assignment that simply doesn't exist. The agreement, entered into by Stephen Krasemann and DRK on April 14, 2009, assigns "all copyrights and complete legal title in the Images."[65] The Images are described as being, "the undersigned's images . . . selected by DRK Photo . . . and included in DRK's collection."[66] The assignment does not differentiate between photographs that had already been registered with the Copyright Office and those that had not. "[A] basic rule of contract construction is that a contract must be interpreted in light of the meaning which the parties have accorded to it as evidenced by their conduct in its performance."[67] Where, "the parties to the contract have agreed on its terms, . . . it would subvert freedom of contract principles to benefit a third party by employing a legal doctrine . . . that yields a contrary result."[68] The plain meaning of the assignment agreement, and the meaning intended by both parties, is that Stephen Krasemann

---

[63] Two of the assignors also confirmed by declaration that the rights they assigned have not reverted back to them. *See* Declaration of Stephen Krasemann ("S. Krasemann Decl."), and Declaration of Raymond Phillips ("Phillips Decl.") Pursuant to the AAA Commercial Arbitration Rules, R-23 (a), "The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission."

[64] Wiley does not appear to contest that DRK has standing to bring fraud claims related to use of these photographs.

[65] *See* D. Krasemann Decl., Ex. 1, page 20 (S. Krasemann Copyright Assignment and Accrued Causes of Action Agreement).

[66] *Id.*

[67] *James v. Zurich-American Ins. Co. of Illinois*, 203 F.3d 250, 255 (3d. Cir. 2000); *see also Samsel v. Allstate Ins. Co.*, 199 Ariz. 480, 484, ¶ 14, 19 P.3d 621, 625 (App.2001) ("Generally, privity of contract must exist before one may seek to enforce or defeat the contract.") (*vacated on other grounds*, 204 Ariz. 1, 59 P.3d 281 (2002)).

[68] *James v. Zurich-American Ins. Co. of Illinois, supra* at 258.

assigned to DRK all his photographs in its collection.

Wiley appears to argue that, because the purpose of the assignments was to allow DRK to register photographs with the Copyright Office, Stephen Krasemann's assignment must not have been intended to cover photos that were already registered. Wiley makes much of Dan Krasemann's November 18, 2012 e-mail message to John Cancalosi (another photographer in suit) stating that DRK's purpose in requesting the assignments was to allow DRK "to register the works *for the purpose of pursuing would be infringers,*" but ignores the second half of the sentence. The assignment agreement was necessary for DRK to police the images it was licensing on Stephen Krasemann's behalf, including the pre-registered Photographs.[69]

Stephen Krasemann's intent to transfer the copyrights in all of the images he had placed with DRK for licensing is evident not only in the agreement itself, but in a recent e-mail sent by Stephen Krasemann reiterating that the agreement is still in effect, and applies to "photographs licensed by DRK photo."[70] Finally, to remove any question about his intentions, Stephen Krasemann executed a declaration explaining that he intended the 2009 agreement to transfer copyrights to all of his photographs in the DRK collection, including those he had registered himself. Even if the previous assignment is unclear, Stephen Krasemann's declaration is sufficient to give DRK standing to bring infringement claims for the pre-registered images.[71]

### C. DRK has a valid assignment from Tom Bledsoe.

Wiley next takes issue with the assignment of rights in the Tom Bledsoe photographs.

---

[69] Wiley also fails to explain why comments made to a different photographer have any bearing on Stephen Krasemann's understanding of the agreement he signed, or provide any evidence that Stephen Kraseman would even know the statement was made.

[70] *See* D. Krasemann Decl. ¶14, Exhibit 5, page 12.

[71] *See Huebbe v. Oklahoma Casting Co.,* 663 F.Supp. 2d 1196, 1205-06 (W.D.Okla. 2009) (finding that a copyright assignment executed two years after the underlying lawsuit was filed was valid and sufficient to convey standing, explaining, "according to the courts which have considered the question, the fact that the assignment in this case was not executed until after the litigation commenced does not preclude its enforcement in this action").