UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

JOHN WILEY & SONS, INC.,                              :   Case No. 1:11-cv-05454 (KPF)

      Plaintiff, Counterclaim Defendant,       :

                                                                    :

           -against-                                    :   **ECF Case**

DRK PHOTO,                                                      :

      Defendant, Counterclaimant.                   :

                                                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


### JOHN WILEY & SONS, INC.'S MEMORANDUM OF LAW
### IN OPPOSITION TO DRK'S MOTION FOR PARTIAL SUMMARY JUDGMENT


Robert Penchina
Christopher P. Beall
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
321 W. 44th Street, Suite 1000
New York, NY 10036
(212) 850-6100

Joseph J. Barker
JOHN WILEY & SONS, INC.
111 River Street
Hoboken, NJ 07030
(201) 748-7862

*Attorneys for Plaintiff John Wiley & Sons, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

FACTS .................................................................................................................................. 2

ARGUMENT ........................................................................................................................ 4

I.     THE RECORD PRESENTS GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER WILEY EXCEEDED THE SCOPE OF ITS LICENSES RELATING TO THE EIGHTY-EIGHT INSTANCES FOR WHICH DRK SEEKS SUMMARY JUDGMENT ................................................................... 4

II.    DRK LACKS STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIMS ................................................................................................................... 7

III.   DRK'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS .................... 8

    A.    The Claims Are Barred Under the Injury Rule ........................................... 8

    B.    The Claims Are Barred Under the Discovery Rule .................................... 9

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Auscape Intern. v. National Geographic Soc.*,
409 F. Supp. 2d 235 (S.D.N.Y. 2004)..................................................................................8

*Design Basics, LLC v. Roersma & Wurn Builders, Inc.*,
2012 WL 1830129 (W.D. Mich. Apr. 23, 2012) ................................................................10

*Kwan v. Schlein*,
441 F. Supp. 2d 491 (S.D.N.Y. 2006)................................................................................10

*Luar Music Corp. v. Universal Music Group, Inc.*,
847 F. Supp. 2d 299 (D.P.R. 2012) .....................................................................................9

*O'Connor v. Boeing N. Am., Inc.*,
311 F.3d 1139 (9th Cir. 2002) ...........................................................................................12

*Ortiz v. Guitian Bros. Music Inc.*,
2008 WL 4449314 (S.D.N.Y. Sept. 29, 2008)...................................................................10

*Polar Bear Productions, Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004) ...............................................................................................9

*Ranieri v. Adirondack Dev. Group, LLC*,
2013 WL 1292010 (N.D.N.Y. Mar. 27, 2013) ....................................................................8

*Taylor v. Meirick*,
712 F.2d 1112 (7th Cir.1983) ..............................................................................................9

*Urbont v. Sony Music Entertainment*,
863 F. Supp. 2d 279 (S.D.N.Y. 2012).................................................................................8

*William A. Graham Co. v. Haughey*,
568 F.3d 425 (3d Cir. 2009) ................................................................................................9

*Williams v. Curington*,
662 F. Supp. 2d 33 (D.D.C. 2009) ......................................................................................9

*Wood v. Carpenter*,
101 U.S. 135 (1879)...........................................................................................................12

**Statutes**

17 U.S.C. § 410(c) .....................................................................................................................7

John Wiley & Sons, Inc. ("Wiley") respectfully submits this memorandum in opposition to DRK Photo's motion for partial summary judgment.

## INTRODUCTION

DRK is a stock photo licensing agency that, for the most part, holds non-exclusive licenses to the photos in its collection that it began accumulating in the 1980s. About five to six years ago, DRK—prodded by its contingent fee law firm—decided to commence lawsuits against its publisher clients for the "infringement" of print run estimate invoiced terms that no one – neither DRK nor the publisher – had ever considered material. But, DRK knew that it had a problem: its non-exclusive licenses gave it no standing to pursue copyright infringement claims. So DRK embarked on a program of getting photographers to sign transfer agreements purporting to give to DRK the right to sue on the photographers' behalf.

Recognizing that DRK's transfer agreements are insufficient to confer standing to commence copyright litigation, Wiley has moved for summary judgment seeking dismissal of DRK's claims on the ground that DRK lacks standing to pursue claims for 272 of the 316 instances of alleged infringement identified in amended complaint and in the counterclaims. The record before the Court on that motion shows conclusively that DRK's transfer agreements are "shams" and incapable of providing copyright standing to DRK.

DRK now moves for partial summary judgment on just 88 of those instances. It asserts that "[t]he undisputed facts show that DRK is the legal and beneficial copyright owner of the Photographs at issue." DRK Mem. 16. But, DRK ignores Wiley's evidence and law to the contrary—and its position is essentially frivolous. There is simply no basis in law or in fact for the summary judgment that DRK purports to seek. Thus, the summary judgment DRK seeks should be denied.

1

Even if this were not sufficient on its own, DRK's request for "judgment of liability for copyright infringement against Wiley" also should be denied because many of the purported excess uses DRK complains about actually were permitted by the parties' agreements. Indeed, the meritless nature of DRK's motion is made plain by the fact that DRK seeks a judgment with respect to a claim already decided in arbitration (for which the arbitrator awarded DRK less than $163 in combined damages and profits)[1] and six claims involving photographs belonging to photographer Michael Collier,[2] notwithstanding that in its prior pleadings "DRK voluntarily dismisse[d] all claims relating to Michael Collier's images." DRK Opp. 19 (Dkt. #66). Moreover, the infringement claims for which DRK seeks judgment are barred by the three-year statute of limitations applicable to copyright infringement actions.

## FACTS

DRK is a stock photography agency that licenses photos for use by others on a non-exclusive basis. Penchina Dec. (Dkt. #54) Ex. 30 at 78. DRK does not employ photographers nor obtain ownership of photos through the "made for hire" provisions of the Copyright Act. *Id.*, Ex. 30 at 75-76. Instead, during the 1980s and 1990s, DRK entered into a series of "representation" agreements pursuant to which DRK agreed to "act as [the photographers'] agent with respect to the sale or leasing of the[ir] photographs." D. Krasemann Dec. (Dkt. #67) Ex. 1. DRK's representation agreements for all of the photographers whose works are at issue on DRK's motion (with the exception of Tom Bean) are non-exclusive. *Id.*; Penchina Dec. Ex. 30 at 75, 148. None of these agreements contain language purporting to convey to DRK ownership

---

[1] DRK seeks a judgment relating to a use in the book The Sciences 2e by Trefil (2nd Boyd Dec. (Dkt. #76) Ex. A, line 1) even though the arbitrator held that this claim was arbitrable and ruled on it. Boyd Dec. (Dkt. #69) Ex. 1 at 6, 14).

[2] Lines 32, 33, 48, 49, 73 and 79 of Exhibit A to the Second Declaration of Autumn Witt Boyd.

2

of copyright or anything else.  To the contrary, "the photographers retain[] the copyright," Penchina Dec. Ex. 2 at 10-11; *see id.* Exs. 1, 4, and DRK merely acts "as [the photographers'] agent with respect to the sale" of the photos.  D. Krasemann Dec. Ex. 1.

Beginning around 1992, DRK began licensing photos for inclusion in textbooks and related products published by Wiley.  For each transaction, Wiley would submit a letter to DRK to identify which particular stock photographs from DRK's stock Wiley desired to use, which textbook or other publication the photographs would be included in, and what the estimated print-run would be for that publication.  *See* Counterclaims Ex. 2.  Thereafter, DRK would issue an invoice to Wiley for DRK's fee for Wiley's use of the photographs.  *Id*.

Generally, the prices that DRK charged Wiley were established by pricing agreements entered into between them.  Penchina Dec. Exs. 25, 26.  These pricing agreements, as well as industry standards, established other terms applicable to the parties' transactions.  For instance, the "base price" charged to Wiley for distribution in North America gave Wiley the right "to include 10% or less distribution abroad."  *Id*.; *see, e.g.,* Penchina Response Dec. Ex. 4 at 18; Ex. 5 at 118-19; Ex. 2 at 3; Ex. 4 at 107.

Pursuant to the pricing agreement beginning in 2000, DRK charged Wiley $170 for the right to print up to 40,000 copies of a book in which DRK's photo comprised up to half a page, and DRK charged an additional 10%—i.e. $17—to print up to 80,000 copies.  Penchina Dec. Ex. 25, Ex. 30 at 44.  Given the minute increase in fees, and that the price DRK would have charged Wiley for making 40,000 copies would have been the same had Wiley requested to make just 100 copies, *id*. Ex. 25, the estimated print run supplied by Wiley incorporated into invoices was simply not a material term.

3

Because no, or a *de minimis*, amount of money was at stake when a print run limit was exceeded, for decades DRK made no efforts to determine whether Wiley had exceeded any press run or other license limitations.  Sometime in 2008, "long after" DRK retained them as counsel, DRK's attorneys asked Dan Krasemann, the owner of DRK, to give testimony in a case they brought against another textbook publisher, Houghton Mifflin Harcourt.  Penchina Dec. Ex. 2 at 108.  Around that time, DRK and its attorneys also initiated a "program" to bring copyright infringement actions by DRK against textbook publishers to assert decades-old claims on behalf of photographers whose works were in DRK's collection, notwithstanding that DRK did not own the copyrights or any of the exclusive rights at issue.  *Id*., Exs. 4, 5.  DRK well knew that its existing representation agreements with the photographers did not give it standing to pursue infringement claims.  So, to effectuate this scheme, in 2008 DRK asked photographers to sign an "assignment form" that, despite nominally mentioning a transfer of copyright, the only purpose was "for [DRK] to have the legal standing with the courts to pursue would be infringers." Penchina Dec. Ex. 11.  Following their execution of these agreements, some of the photographers signed nearly identical forms that DRK's same attorneys provided to other of their agency clients, purporting to assign to other agencies exactly the same copyrights on the same photographs they supposedly had already assigned to DRK.  *See* Supp. Penchina Dec.(Dkt. #84) Exs. B - K.

## ARGUMENT

I.  **THE RECORD PRESENTS GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER WILEY EXCEEDED THE SCOPE OF ITS LICENSES RELATING TO THE EIGHTY-EIGHT INSTANCES FOR WHICH DRK SEEKS SUMMARY JUDGMENT**

DRK's motion for summary judgment is directed at only 88 of the 316 alleged instances of infringement.  There will be a trial even if DRK is completely successful.  There are, however,

4

genuine issues of material fact that prevent summary judgment with respect to these 88 instances.

First, judgment with respect to 6 claims relating to photographer Michael Collier's work[3] should be denied because DRK has withdrawn those claims. DRK Opp. (Dkt. #66) 19. Likewise, its claim based on a photo appearing in The Sciences 2e by Trefil[4] should be rejected because that claim already was made and decided in arbitration. Boyd Dec. (Dkt. #69) Ex. 1 at 6, 14).

DRK alleges that Wiley infringed the copyright in its photos by printing 59,361 copies of Visualizing Physical Geology 1e (2nd Boyd Dec. Ex. A, p.15, lines 87, 88), and it cites Exhibit B to the Second Boyd Declaration as supporting that allegation. But, review of Exhibit B reflects that Wiley distributed far fewer than alleged by DRK. To the contrary, Wiley printed fewer than 30,000 copies—much less than the 40,000 amount licensed by DRK. Suarez Dec. ¶ 4. Thus, DRK is not entitled to judgment for claims relating to this book.

Likewise, DRK drastically overstates the amount of copies of Introducing Physical Geography 3e by Strahler.[5] DRK alleges that Wiley printed in excess of 40,000 copies, but the actual number is less than 40,000. Suarez Dec. ¶ 5. DRK apparently included in its calculation copies of ancillary products which do not include DRK's photos.

Beyond these individual instances, there are broader issues of material fact barring summary judgment where DRK has accurately reported the number of copies printed. It is undisputed that pursuant to the pricing agreement between DRK and Wiley, DRK charged Wiley

---

[3] Lines 32, 33, 48, 49, 73, 79 of Exhibit A to the Declaration of Autumn Witt Boyd.

[4] Line 1 of Exhibit A to the Declaration of Autumn Witt Boyd.

[5] Lines 39 – 56 of Exhibit A to the Declaration of Autumn Witt Boyd.

$170 to print any number of copies up to 40,000. Whether Wiley provided DRK with an estimated print run of ten-, twenty-, thirty-, or forty-thousand, the price DRK would have charged would have been the same: $170. Penchina Dec. Ex. 30 at 42-43.[6] For 40,000 to 80,000 copies, DRK charged $17 more. Penchina Dec. Ex. 25. The print run estimates were simply not a material term—and neither party treated it as such.

    Indeed, because the price would have been the same no matter the number provided, some of Wiley's requests for permission did not even give an estimated print run. Penchina Response Dec. Ex. 6 at 61-63. There is no dispute that, for all of the transactions between them, Wiley paid and DRK received the full price DRK was entitled to for 40,000 copies. Thus, Wiley was entitled to print, and DRK was fully compensated and incurred no loss for, any number of copies up to 40,000. Accordingly, DRK is not entitled to summary judgment based on alleged print overruns up to 40,000 actual printings—no matter what the "estimated" or invoiced lesser amount. Wiley will present evidence on this at trial.

    Likewise, it is undisputed that, pursuant to the parties pricing agreement, a license for North American distribution included the right to distribute 10% of the copies outside of North America. Penchina Dec. Ex. 25. Indeed, DRK's own designated expert has testified that this is the industry standard. *See, e.g.,* Penchina Response Dec. Ex. 2 at 3. Thus, where Wiley distributed 4,000 or less copies outside of North America (i.e., 10% of the 40,000 copies Wiley paid for), Wiley was fully within its rights. Therefore, summary judgment should not be granted for the instances where DRK asserts distribution outside "North America" of less than 4,000 copies in lines 14 -16, and 71of Exhibit A to the Declaration of Autumn Witt Boyd.

---

[6] Wiley printed fewer than 40,000 for all photographs in lines 8 through 79, and 87 through 88 of Exhibit A to the Declaration of Autumn Witt Boyd.

In sum, there are genuine issues of material fact concerning whether Wiley exceeded the terms of its licenses, and DRK's motion for summary judgment should be denied.

## II. DRK LACKS STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIMS

Wiley's motion for summary judgment explained that DRK lacked standing to assert nearly all of its claims for copyright infringement. (Dkt. Nos. 53 and 83). DRK is neither the copyright holder[7] nor the exclusive holder of a copyright for 72 of the 88 claims for which it seeks summary judgment. In this motion, DRK cites to the same "representation" agreements with photographers that it cited to in opposition to Wiley's motion for summary judgment.[8] Wiley fully briefed this issue in its motion for summary judgment. *See* Dkt. Nos. 53 and 83.

DRK only half-heartedly argues that the photographers "assigned their copyrights and the right to bring and resolve claims to DRK." DRK Mem. 7. Wiley fully briefed this issue in support of its motion for summary judgment, and it incorporates by reference those papers here. *See* Dkt. Nos. 53 and 83.[9]

---

[7] DRK curiously implies that its copyright registrations are valid because the photos are more than five years old. But, it misunderstands the law. A presumption of validity applies only to "registration[s] made before or within five years after first publication of the work." 17 U.S.C. § 410(c). None of the photographs at issue on this motion were registered within the five year period. Hence, there is no presumption of validity.

[8] In the related Arizona arbitration, DRK argued that its standing was entirely derived from the assignment agreements that since have been rejected by multiple courts. Indeed, DRK objected to even producing the representation agreements in the arbitration. When Wiley asked DRK to produce those agreements, DRK argued that they were not relevant and should not have to be produced by DRK because its "assignment agreements grant DRK the right to bring all claims, regardless of whether or by whom a license was granted." Supp. Penchina Dec. Ex. M; *see id*. ("We also do not believe that DRK's licensing agreements with its photographers or related correspondence would be relevant to the issues in this case."). Since then, the *Minden* decisions rejected similar assignment agreements drafted by DRK's very same contingent fee lawyers as "shams," so DRK now desperately claims that the representation agreements are what give it standing.

[9] Wiley's standing arguments do not apply to the claims DRK asserts in connection with the works of Tom Bean, who issued an exclusive license to DRK. But, these claims lack merit because Wiley did not

7

### III. DRK'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

The only photographs where DRK might have standing are those that belong to Tom Bean. Even if DRK were somehow shown to have standing to raise individual photographers' claims in addition to Bean's claims, there still remain material factual issues that would preclude any automatic judgment of liability given the length of time DRK has sat on these claims.

All copyright infringement claims are necessarily constrained by the three-year statute of limitations set forth in the Copyright Act, 17 U.S.C. § 507(b). The claims for which DRK seeks summary judgment relate to alleged infringements occurring as long ago as 1997. This case, however, was initiated on August 5, 2011. Thus, claims accruing prior to August 5, 2008 are presumptively barred.

#### A. The Claims Are Barred Under the Injury Rule

Under the injury rule, a cause of action accrues and the statute of limitations begins to run at the time the alleged infringement occurred. *Urbont v. Sony Music Entertainment*, 863 F. Supp. 2d 279, 281 (S.D.N.Y. 2012). "The majority of District Courts within the Second Circuit follow the [injury] rule, despite the consensus of courts outside of the Second Circuit that follow the discovery rule." *Ranieri v. Adirondack Dev. Group, LLC*, 11 CV 1013 GTS/CFH, 2013 WL 1292010, at *3 (N.D.N.Y. Mar. 27, 2013). And, "[s]ince *Auscape* [*Intern. v. National Geographic Soc.*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004)], a majority of district courts in the Southern District of New York have followed Judge Kaplan's lead and applied the injury rule to infringement claims." *Urbont*, 863 F. Supp. 2d at 282.

Here, Wiley published every work prior to August 5, 2008. Exhibits B and C to Ms. Boyd's declaration demonstrate that nearly all of the sales and distribution also occurred prior to

---

exceed the licenses it held from DRK (*see* Point I, *supra*), or they are barred by the statute of limitations (*see* Point III, *infra*).

8

August 25, 2008.  Accordingly, claims based on this conduct—*i.e.*, lines 8 to 56 and 87 to 88— are entirely barred.  DRK's motion for summary judgment for 50 of the 88 claims should be denied.

**B.     The Claims Are Barred Under the Discovery Rule**

Even if the "discovery rule" applied, DRK's claims at issue on this motion are barred.  Or, at a minimum, a trial is required.  Under the discovery rule, a copyright infringement claim accrues at the time when a plaintiff knew or *should have known* about the alleged infringement.  *See, e.g., Williams v. Curington*, 662 F. Supp. 2d 33, 38 (D.D.C. 2009).  The issue is "whether 'a reasonable prudent person in the plaintiff's shoes would have discovered (that is, would have acquired an awareness of) the putative infringement.'"  *Luar Music Corp. v. Universal Music Group, Inc.*, 847 F. Supp. 2d 299, 309 (D.P.R. 2012).  "A reasonably prudent person is charged with a duty of diligence. Under the duty of diligence, 'a plaintiff can be charged with inquiry notice, sufficient to start the limitations clock, once he possesses information fairly suggesting some reason to investigate whether he may have suffered an injury at the hands of a putative infringer.'"  *Id*. (citation omitted).  A potential copyright infringement plaintiff "'has a duty of diligence: it is not enough that he did not discover he had a cause of action, if a reasonable man could have.'"  *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 707 (9th Cir. 2004) (quoting *Taylor v. Meirick,* 712 F.2d 1112, 1117-18 (7th Cir.1983)); *see, e.g., William A. Graham Co. v. Haughey*, 568 F.3d 425, 438 (3d Cir. 2009) (in considering whether copyright plaintiff "'should have known of the basis for'" its claims, court considers "whether [plaintiff] had sufficient information of possible wrongdoing to place [it] on inquiry notice or to excite storm warnings of culpable activity'") (citation omitted, alterations in original).

Generally, when applying the discovery rule to infringements arising from an alleged unauthorized publication of a work, the cause of action is deemed to accrue upon that

9

publication. *See, e.g.*, *Kwan v. Schlein*, 441 F. Supp. 2d 491, 499 (S.D.N.Y. 2006) ("Even applying the more liberal discovery rule," a plaintiff "knew or should have known . . . when the book was published-or shortly thereafter."); *Design Basics, LLC v. Roersma & Wurn Builders, Inc.*, 2012 WL 1830129, at *2 (W.D. Mich. Apr. 23, 2012) ("[I]f the infringement is open and notorious, the copyright holder should be expected to discover it within a three year period."). Thus, where DRK's claims are based on publication outside the authorized territory, or in an unauthorized medium (*i.e.*, CD-Rom or online), its cause of action accrued upon those unauthorized publications. *Ortiz v. Guitian Bros. Music Inc.*, 2008 WL 4449314, at *3 (S.D.N.Y. Sept. 29, 2008) (holding that limitations period began to run "when the DVD was officially released and publicly distributed").

Thus, for example, DRK seeks summary judgment for claims based on distribution of Blue Planet 2e by Skinner outside of North America in 1999.  2nd Boyd Dec. Ex. A, p.1.  That claim is barred.  Likewise, DRK claims that Strahler Science 2e was "[r]eproduced in unlicensed CD and website" in 2002 and 2003.  2nd Boyd Dec. Ex. A, p.5.  The statute of limitations began to run then, and expired long before this case was brought.  *See, e.g., Ortiz*, 2008 WL 4449314, at *3.

But, even if these cases did not apply, the record shows that DRK ignored possible claims for years—simply because there was little or no money at stake.  Apart from being charged with knowledge upon publication of the allegedly infringing items, DRK has long been aware of circumstances giving rise to its claims—including claims based on alleged excess printing.  In 1998, DRK was in contact with Jim Pickerell, the publisher of an online newsletter covering the stock photography industry (who DRK ultimately designated as its expert in this case) about DRK's issues with a publisher.  *See* Penchina Response Dec. Ex. 8.  At about the same time, Mr.

Pickerell was publishing columns about unauthorized uses of photos made by textbook publishers, telling people like Dan Krasemann that "You can no longer trust the publisher" or "maybe any publisher." *Id*. Ex. 9 at 3. Mr. Pickerell testified that, by 1999, "we could no longer trust the publishers to abide by the agreements that they had made," and he "tried to get the word out." *Id*. Ex. 3 at 75-77. Simultaneously, PACA—a photography organization of which DRK was a member, *id*. Ex. 10 at 49—tried to "get that same word out." *Id*. Ex. 3 at 77. Thus, storm warnings reached DRK as early as 1999.

Sometime prior to June 2008—*i.e.*, more than 3 years before this case was filed—DRK retained contingent fee lawyers who have attempted to make a cottage industry of suing textbook publishers for print overruns. This came about because Dan Krasemann had received a call from someone at another photo agency who "said there were some interesting developments and I might like to talk to someone at Harmon & Seidman [about] what was happening." *Id*. Ex. 6 at 19. Dan Krasemann not only retained those lawyers to represent DRK, but actively assisted in their campaign against textbook publishers by voluntarily providing testimony in 2008 in support of print overrun claims against a publisher by another of their photography clients. *See* Penchina Dec. Ex. 2 at 14-16. By June 2008, the attorneys provided the form agreement that DRK sent to photographers in order "for DRK to have standing to sue." Penchina Dec. Ex. 30 at 113; *id.* Ex. 9. DRK then initiated a campaign suing textbook publishers, one at a time.[10]

Thus, by June 2008, DRK was well aware of "problems" in the textbook industry relating to alleged print overruns and other unauthorized uses. But, DRK consciously avoided learning specific information about Wiley's alleged overuses while it pursued other litigation. DRK

---

[10] *DRK Photo v. Houghton Mifflin Harcourt*, 09-cv-08225-NVW (D. Az. Dec. 14. 2009); *DRK Photo v. McGraw Hill Cos.*, 11-cv-08059-FJM (D. Az. Apr. 15, 2011); *DRK Photo v. Pearson Educ., Inc.*, 11-cv-08097-PGR (D. Az. Jun. 27, 2011); *DRK Photo v. John Wiley & Sons, Inc.*, 1-cv-08133-FJM (Aug. 25, 2011).

contends that it did not learn about possible overuse by Wiley until Wiley did not respond to an inquiry DRK made on January 27, 2010 about Wiley's uses of photos in a few prior editions of a book. Penchina Response Dec. Ex. 12; *id*. Ex. 6 at 37-38.  But, although DRK periodically "might hear something through the grapevine that there's a problem" with particular books or publishers, *id*. Ex. 10 at 40-41, and it was a "policy of ours [DRK]" to "follow up with an email . . . to enquire about previous editions" when it received requests to relicense photos, *id*. Ex. 6 at 218-19, DRK never even asked Wiley about its past uses until January 2010.  *Id*. at 218.  Indeed, DRK's failure to exercise the requisite diligence is made plain by the fact that, prior to 2010, it never once asked Wiley for information about the extent of Wiley's usage notwithstanding that DRK's licenses to Wiley required that: "In the event that any images are used by Recipient in publications, then Recipient shall send to DRK PHOTO, on a semi-annual basis (June 30 and December 31) a certified statement *setting forth the total number of sales . . . and other uses*." *Id*. Ex. 1 (emphasis added).  DRK *never asked* for nor received such statements.  This alone is sufficient to charge DRK with knowledge the first time it failed to ask for such statements.  *See, e.g., O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002) (applying discovery rule, plaintiff is held not only to actual knowledge but knowledge that reasonably could be discovered through investigation of sources open to her; "This concept of constructive notice is captured by the maxim that 'the means of knowledge are the same thing in effect as knowledge itself.'") (quoting *Wood v. Carpenter*, 101 U.S. 135, 143 (1879)).  Thus, whether or not DRK had actual knowledge of any alleged infringement, it *would have and should have known* within six months of each challenged use had it asked for the certified statements.

     Of course, DRK's at best dilatory attitude to print overruns beyond estimated (or invoiced) amounts also demonstrates compellingly the broader point raised at point I above: print

run estimates were <u>not</u> seen by the industry as "material" (at least until a few plaintiffs' contingency boutiques started suggesting otherwise).

In any event, there are factual issues relating to when DRK first knew or reasonably should have known about the infringements it asserts in lines 8 to 56 and 87 to 88 of its Exhibit A, DRK's motion for summary judgment should be denied.

## CONCLUSION

DRK's attempt to assert copyright infringement claims on behalf of non-party photographers should be disallowed because neither DRK's representation agreements nor its nominal transfers of copyright are capable of giving standing to DRK.  Even if DRK had standing, its claims are barred by the statute of limitations.  Finally, there are genuine issues of material fact concerning whether Wiley even exceeded the licenses that undisputedly were granted to it.  For all of the foregoing reasons, Wiley respectfully requests that the Court deny DRK's motion for partial summary judgment.

Dated:  New York, New York
        July 26, 2013

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By: _____

    Robert Penchina
    Christopher P. Beall
321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100
(212) 850-6299 (Fax)

Joseph J. Barker
JOHN WILEY & SONS, INC.
111 River Street
Hoboken, NJ 07030
(201) 748-7862

*Attorneys for John Wiley & Sons, Inc.*