UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
JOHN WILEY & SONS, INC., :
      Plaintiff, :
: 1:11-CV-05454-KPF
      v. :
: ECF Case
DRK PHOTO, a sole proprietorship, :
:
      Defendant. :
-------------------------------------------------------------- :
DRK PHOTO, a sole proprietorship, :
      Counterclaimant, :
:
      v. :
:
JOHN WILEY & SONS, INC. :
:
      Counterdefendant. :
-------------------------------------------------------------

**THIRD DECLARATION OF DANIEL KRASEMANN**

I, Daniel Krasemann, hereby declare pursuant to 28 U.S.C. § 1746:

1. I have owned and operated DRK Photo ("DRK"), the Defendant and Counterclaimant in the above-entitled matter, as a sole proprietorship since 1981. I have personal knowledge of the matters set forth herein.

2. The assignment agreements attached as Exhibits C and D, F and G, H and I, J, and K to the Supplemental Declaration of Robert Penchina (Court Doc. 84), which Wiley argues assign ownership of rights in the same photographs, to the best of my knowledge each involve different photographs.

3.     The DRK Photo assignment agreements each state that the photographers assigned rights to DRK only in "the undersigned's images ('the Images') *selected by DRK PHOTO ('DRK') and included in DRK's collection.*" *Id*. Exhibits C, F, H, J (emphasis added).

4.     The other agencies' assignment agreements likewise each state that the photographers assigned rights to those agencies only in "the undersigned's images ('the Images') *selected by* [the other agencies] *and included in* [the other agencies'] *collection.*" *Id*. Exhibits D, G, I, K (emphasis added).

5.     It is not common practice for photographers to submit the exact same photograph to two agencies for licensing. Most of the photographs-in-suit were submitted to DRK on the original film, with each individual frame constituting a unique image. It was highly uncommon for most photographers to submit duplicates of the original film to DRK (a very small percentage of the film DRK has received from its photographers has been duplicate film).

6.     In talking with our photographers, their most common practice was to first send DRK a selection of film. DRK would make (and retain) its film selections and return any outtakes to the photographer. Then, the photographer would send the film outtakes to his next-in-line agency. This handing-down of film outtakes would continue through a "pecking order" the photographer might have with his photo agencies. The photographer might send another agency a similar photo to the one DRK retained, but not the exact frame. The only instance in which two agencies would possess the exact same photograph is if the photographer made a duplicate, which again was a rarity with most photographers in my experience. Barring that, by virtue of ownership of the original, physical frame of film, another agency could not have the same picture because DRK has held that piece of film in its collection since the day it was submitted to and selected by DRK.

7. Without looking at any two images whose copyrights were allegedly assigned to both DRK and another agency, side-by-side, I cannot say for certain whether any of these photographers assigned rights to the same photo to DRK and another agency. Wiley has not provided any evidence of any specific photographs whose copyrights were allegedly assigned to both DRK and another agency.

8. To the best of my knowledge, the photographs whose copyrights the photographers assigned to DRK are different from the photographs whose copyrights the photographers assigned to other stock photography agencies.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Daniel Krasemann

DATE: _____8-9-2013_____

4