F34QwilC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JOHN WILEY & SONS, INC.

        Plaintiff

    v.                        11 CV 5454 (KPF)

DRK PHOTO,

        Defendant

------------------------------x

                          New York, N.Y.
                          March 4, 2015
                          11:00 a.m.

Before:

            HON. KATHERINE POLK FAILLA

                          District Judge

                APPEARANCES

LEVINE SULLIVAN KOCH & SCHULZ LLP
    Attorneys for Plaintiff
ROBERT PENCHINA

HARMON & SEIDMAN LLC
    Attorneys for Defendant
MAURICE J. HARMON

1              (In open court; case called)
2              THE DEPUTY CLERK:  Counsel, please identify yourselves
3     for the record beginning with plaintiff.
4              MR. PENCHINA:  Good morning, your Honor.  Robert
5     Penchina for John Wiley & Sons.
6              THE COURT:  Good morning, sir.
7              MR. HARMON:  Good morning.  Maurice Harmon for DRK.
8              THE COURT:  Good morning.
9              Welcome to both of you and thank you for coming in
10    today.
11             I think there may have been some signals crossed, so
12    let's talk about it.  I received word from the parties earlier
13    this year that they were interested in potentially resolving
14    the two cases before me in the series of copyright infringement
15    cases in which the Wiley Publishing firm was a litigant.  There
16    was discussion about moving them so that they would be before
17    the same magistrate.  So, we had those discussions.  I
18    understood from those discussions that one of the reasons the
19    parties were interested in settling the matter is because there
20    was perhaps some uncertainty and there was this pending
21    reconsideration motion before me in this case, the 5454 Docket
22    No. case.
23             So I stopped working on the reconsideration motion
24    because I figured I won't have to if you settle, but then you
25    settled and I thought, even better.  But then I got the order

1   for the settlement and it seems to perhaps forgotten that there
2   was this open reconsideration motion.  I think that must have
3   been what happened; that perhaps the parties forgot there was a
4   pending motion.  And to the extent that is because it was
5   before me for a couple of months, that is the lot of a judge.
6          I would prefer, if this case is going up -- and I have
7   no opinion as to whether it should -- that I actually have the
8   right answer or at least that I resolved the reconsideration
9   rather than letting it go.  That's what I brought the parties
10  in today for.
11         Have I correctly interpreted what has happened; that
12  perhaps the parties forgot there was this motion for
13  reconsideration?
14         MR. PENCHINA:  I think so, your Honor.  My
15  understanding was -- well, Mr. Harmon and I were not the
16  principal attorneys involved in the settlement.  The attorneys
17  who were involved in the settlement did wish to resolve
18  everything that was in the district court and then preserve
19  their right to appeal.  @We didn't treat the pending motion in
20  the stipulation to get rid of what was here.  So we have
21  settled all of what were the live claims that were still in the
22  case.  Those are settled; settled with prejudice.  The idea was
23  that whatever was before the Court would now be final for
24  appeal.
25         We understood from the conference that we had with

1  Magistrate Judge Francis that your Honor may prefer to issue a
2  ruling on the pending motion.  I suppose, from my perspective,
3  it could go either way.  If that completes the record and makes
4  it ready for appeal, that's fine.  But we had intended to
5  settle the entire case at the district court level.
6           THE COURT:  Mr. Harmon.
7           MR. HARMON:  Yes, that's generally correct, with this
8  caveat:  The *Psihoyos* part of the motion for reconsideration
9  resulting from the ruling after your ruling we think shouldn't
10 go up on appeal.  I think the Court probably agrees with that.
11          THE COURT:  I missed the very first part.  Say that
12 again, sir.  I want to hear that again.
13          MR. HARMON:  I said with respect to *Psihoyos*, the
14 statute of limitations case, given the *Psihoyos* decision after
15 your decision, we don't think that is an appropriate issue to
16 brief again and go up, and I'm sure Mr. Penchina agrees.
17          THE COURT:  Right.
18          MR. HARMON:  Otherwise, what Mr. Penchina said was
19 largely right.  I do want to get credit that we have settled
20 the other Wiley case.  So we got it half right.  We got
21 three-quarters right, actually.
22          THE COURT:  It did not seem appropriate to thank you
23 for settling a case, but I appreciate the parties have gotten
24 to a point in their relationships where they are settling these
25 matters.

>               That leaves us, gentlemen, with one more case, because
> I think the parties may be involved in it, although it's a
> different publishing company.  It is the McGraw Hill Company,
> and that may be the reason why that one has not settled.
>               MR. HARMON:  Correct.
>               THE COURT:  I understand exactly what you're saying.
> Let me tell you, this may be my own vanity here, but I would
> prefer that the Second Circuit not think I had not thought
> through an issue.  You folks are aware from my decision in the
> *Lefkowitz v. Wiley* case that I recognized that *Psihoyos* was
> what *Psihoyos* was, and it changed.  It was different from the
> *Auscape* decision of Judge Kaplan's in which I placed my faith,
> and I am aware, as both parties are as well, of the *Petrella*
> case from the Supreme Court that came out last year.  One could
> argue, I imagine -- I can imagine who might argue this -- that
> there would be some suggestion that *Psihoyos* was incorrectly
> decided.  I saw very recently a decision from Judge Kaplan in a
> case called *Cooley v. Penguin Group*, 31 F.Supp. 3d -- yes, we
> are at the F.Supp.3d right now -- 599.  Judge Kaplan doubles
> down.  He says, "I understand what *Psihoyos* is and I'm stuck
> with it but I think I was right in *Auscape*, and so there."  And
> I don't disagree with him, but I also recognize that I am bound
> by the Second Circuit.  I can't say to them I prefer Judge
> Kaplan's rulings to yours because they would laugh at me as
> they were reversing me.  So I recognize, as the parties seem to

1  in their settlement discussions recognize, that my decision on
2  the injury rule versus the discovery rule was simply wrong in
3  light of *Psihoyos*.  Some day we will get the clarity we seek
4  from the Supreme Court, but that day is not today.  So, yes,
5  that part I would reconsider.
6        I think as a practical matter I'm just not sure of
7  what difference it makes.  I understood from Judge Francis,
8  perhaps incorrectly, that the parties seem to have factored
9  *Psihoyos* into their settlement discussions and that was the
10 piece, as Mr. Harmon said, was not going up to the circuit.  Am
11 I correct?
12       MR. HARMON:  No.  Because the *Psihoyos*-influenced
13 claims were not part of the settlement and were not valued.
14 Otherwise, we would have been very happy to settle everything
15 and not have any appeal.
16       THE COURT:  Yes, me too.
17       MR. HARMON:  But there was a reluctance, I think, on
18 the part of the plaintiffs in this case to resolve everything.
19 So while I think the plaintiffs understand that the *Psihoyos*
20 dismissals will not stand unless the Supreme Court decides they
21 really can't get it done that fast, so they were just excluded,
22 and they were thought of being part of the collection of cases
23 that would go -- cases but also issues that would go up to the
24 Second Circuit.  The real problem is the standing issue.  Then
25 there is a procedural issue about dismissal with prejudice or

1    without prejudice that is also addressed in our
2    reconsideration.
3             THE COURT:  Absolutely.  What I'd like to do is the
4    following:  The reconsideration motion raised three issues to
5    my attention.  One was *Psihoyos* and one was *Lexmark*, and one
6    was whether the dismissal was with or without prejudice.
7             Here is what I propose to do:  You now have my views
8    on *Psihoyos*, which should come as no surprise to anyone because
9    they are identical to the views I expressed in the subsequent
10   decision that each of you received.  I am very happy to talk to
11   you about my views on *Lexmark* and whether I think it changes
12   what I did in the prior opinion, and I am happy to also tell
13   you what my views are with respect to dismissal.
14            At the conclusion of that, why don't you tell me what
15   you believe I need to do procedurally, having granted or not
16   granted these portions of the reconsideration motion, to aid
17   you in your next steps in this case.  And certainly, gentlemen,
18   I would never stop you, if you wanted to try and settle
19   anything that gets, for lack of a better term, revivified by my
20   decisions today.  But, again, I understood that these
21   settlements were taking place with the backdrop of this looming
22   reconsideration motion and the parties had factored in their
23   views as to the viability of that reconsideration motion when
24   settling the matters.  That hasn't happened and whether it does
25   now is a different issue.

1           Yes, sir.

2           MR. PENCHINA:  I'm not sure from Wiley's perspective
3  that it wasn't taken into account.  I think, as I understand
4  it -- and your Honor's original question was what practical
5  impact does it have -- I think all of the claims for which DRK
6  had standing have been settled.  So the statute of limitations
7  argument no longer applies to those.

8           As to the rest, the main issue is whether the decision
9  on standing was wrong.  If the decision on standing is not
10 wrong, then it doesn't change anything because changing the
11 statute of limitations ruling isn't going to give them any
12 claims because they don't have standing to make those claims.
13 So that all of the claims that will be going up on appeal have
14 the standing issue first and foremost, I believe.

15          On the statute of limitations, I think as we said in
16 our papers and response, once the Second Circuit came out with
17 a decision after your Honor's decision, there is no basis for
18 us to say that the discovery rule at that point should apply,
19 although the questions are whether they then again subsequently
20 change through *Petrella*, but --

21          THE COURT:  I wish you luck on that argument, sir.  We
22 are not ready for that one right now.

23          MR. PENCHINA:  I don't know how this filters in.
24 Again, looking at it from the perspective of saving everybody
25 work, the parties and the Court, we had originally in our

motion or in response to their motion for summary judgment had raised that even under the injury rule it would be barred. That is a much more intense sort of process to go through the record. So I don't know how much time it's worth to spend on the statute of limitations unless there is also going to be a reversal of the standing and for the final issue on whether or not it should have been with or without prejudice as a matter of law at that stage. I think the idea is that currently we want it to be final so you can appeal, so whichever way the law would have turned out perhaps is mooted by the agreement between the parties to conclude at this level and move on.

THE COURT: OK. I don't think that I touched on the issue that you just raised with respect to *Psihoyos*, which was I did see in the briefing below that there is a suggestion that Wiley would win as a matter of law even under a discovery rule.

I could not find that as a matter of law on the record that was presented to me. So whether that lives to fight another day we'll see, but I do recall the efforts made, it was sort of in the alternative view that we would win under this regime as well. But certainly not with the record I have, I could not find that as a matter of law.

*Speaking then about Lexmark*, let me tell you that I did spend some time because I think the issues raised by the parties in the reconsideration motion on *Lexmark* were quite interesting. I spent an awful lot of time reading *Lexmark* and

1  every case that has cited it since.  Let me give you my views

2  on that.  I hope that these are sufficiently clear.

3         The short answer is that I am not changing my view on

4  standing, but let me explain why.  *Lexmark* to me is a departure

5  from prior Supreme Court and Second Circuit decisions that

6  recognized principles of credential standing.  I would have to

7  say -- and I think maybe the parties would even agree -- that

8  it's not entirely clear what its effects will be, but I think

9  there will be effects.  I disagree with certain of the

10 decisions that were called to my attention by the parties and

11 certain decisions that I saw on my own where the courts or the

12 litigants were suggesting that the decision is limited to

13 Lanham Act cases.  I certainly appreciate that that is how

14 Justice Scalia delimited the grant of certiorari, but the

15 actual discussion in *Lexmark* of the zone of interests notion

16 and the proximate causality principle suggested that these were

17 simply existing ways that had been around for a long period of

18 time about who could sue under particular statutes.

19        Moreover, the Second Circuit's later decision in

20 *Chabad-Lubavitch*, which I think the parties are aware of, has

21 already extended the idea of *Lexmark* to *RLUIPA* -- we say around

22 here -- cases.  So I think that particular ship has sailed, the

23 notion of limiting it to Lanham Act.

24        I also think that what remains unclear is the

25 interplay between the standing analysis and *Lexmark*.  I am

1    going to put "standing" in air quotes here, gentlemen, because
2    *Lexmark* itself warns of the danger of confusing Article III
3    standing with whatever else one might have to demonstrate to
4    show that one can bring a claim in federal court.  I think
5    *Lexmark* involved the Lanham Act which had a quite expansive
6    view of potentially who had Article III standing.  I think as
7    well the *RLUIPA* framework also has a rather expansive view of
8    standing.  I think there are statutes, and I think perhaps that
9    Section 501 maybe one of those statutes, where the universe of
10   individuals subject to standing is less expansive.
11           So, to the parties' particular arguments raised to me
12   in reconsideration, I can't at this time accept DRK's argument
13   that *Lexmark* operates as an expansion of statutory standing,
14   especially because the decision consistently refers to
15   principles of zone of interests or proximate causality as
16   limitations on standing.
17           So that the remaining issue to me is whether the
18   *Lexmark* analysis operates in lieu of or in addition to Section
19   501 standing requirements.  It seems to me that the more
20   sensible interpretation is that *Lexmark* is an aid where
21   standing provisions of a particular statute seem especially
22   broad, and in those instances, the Supreme Court suggests
23   looking to the zone of interest or proximate causality which
24   may be discerned from legislative history or things beyond the
25   text of the statute.

             I don't believe it is the case that *Lexmark* upends the explicit provisions set forth in a statute such as Section 501, and I'm reading that statute in conjunction with other statutory provisions such as Sections 101 and 106.

             I also don't think that the decision requires a wholesale revisitation of Second Circuit precedent that has developed concerning standing issues, including the significance of exclusivity or whether the assignment agreement accorded parties like DRK statutory standing.

             I thought that perhaps a party could consider the *Lexmark* analysis for the question of who is a legal or beneficial owner of an exclusive right under the Copyright Act. But here, again, the thing that I am keeping in mind is that the zone in copyright cases may be narrower than, for example, Lanham Act false advertising cases. The *Eden Toys* decision of the Second Circuit suggests as much, as does the *Hyperquest* decision from the Seventh Circuit that I cited in my previous decision.

             With respect to the respective judges, the cases that have been issued since *Lexmark* have not been especially helpful to me on this issue. I agree with the result in the Arizona DRK case and in the *Viesti* decision but not necessarily with their analyses. Just, for example, what I saw in *Viesti* was a suggestion that the *Lexmark* analysis was irrelevant because there were no beneficial or legal copyright interests and thus

1    no standing.  I thought that was a little bit -- I may be
2    getting it wrong, so I don't want to disagree with another
3    judge's analysis, but I found it a little will bit reductive,
4    and the DRK decision in Arizona really spoke about the fact
5    that *Lexmark* didn't consider copyright law, which I thought
6    again that maybe that may have been a limitation that one could
7    make and that may be a limitation that works in Arizona, but in
8    light of the Second Circuit's later decision, that's an
9    argument I just can't accept.
10            I don't find the ERISA cases to be on point because my
11   read of ERISA and its interpretative case law has a more
12   expansive grant of standing and a more expansive view of those
13   beneficiaries who may bring suit.
14            Similarly, the *Sprint* case that was suggested to me I
15   didn't find helpful because the assignees there received the
16   assignment in toto, which I think would have been enough for
17   DRK to obtain statutory standing or the ability to bring a
18   claim here.
19            That leaves us with that very interesting *Corbello*
20   case from the Ninth Circuit.  I did find it fascinating on so
21   many levels.  I guess the easiest way to resolve it is to say
22   it's the Ninth Circuit, and it doesn't apply here, but, again,
23   that seems to be missing the point.  I thought Judge Sack had
24   the better analysis, but I appreciate he was in the dissent,
25   but I thought the real focus on *Corbello*, which is why I don't

1  think it doomed my read of the *Sybersound* decision from the
2  Ninth Circuit was that the focus of *Corbello* was on whether one
3  was a co-owner and how it would be inappropriate to focus on
4  only those who had sole ownership of something.  I don't think
5  one can creditably say that DRK is a co-owner of something
6  based on the assignment agreement.  That is not what I
7  understood that Ninth Circuit decision to be dealing with.

8       So, where I came out was that I thought DRK may well
9  have an injury in fact cognizable under Article III, but I
10 didn't see that it had a cause of action under the Copyright
11 Act.  I was willing to discern from the *Lexmark* decision, or
12 the cases following it, an abrogation of Second Circuit law on
13 standing in copyright cases.  And for this reason, I am not
14 going to revisit my decision on standing.

15      There is this related issue of subject matter
16 jurisdiction.  It would appear that I made things confusing by
17 talking about subject matter jurisdiction being stripped from
18 me.  The verbiage, but not the result, would change in light of
19 footnote 4 of *Lexmark*.  Here, I disagree with DRK's
20 construction of footnote 4.  I think it makes clear that a
21 court can have subject matter jurisdiction; namely, Article III
22 jurisdiction, even when finding that a particular plaintiff
23 cannot bring a cause of action under a particular statute.  In
24 any event, I did decide the limitations issue with respect to
25 other instances for which I found that DRK had statutory

standing.  So my language may not have been the best, but I think the idea was there, and I'm not exchanging what I ultimately did.

I was finally asked to clarify whether the dismissal was with or without prejudice.  I know the parties' argument so I won't recite them back to the parties.  I agree with DRK that this is a request for clarification rather than reconsideration.  I also agree with the presumption that dismissals are without prejudice unless the context makes the contrary clear.

I have both sides citing to me *Hernandez v. Conriv Realty Assoc.*, a Second Circuit decision from 1999.  I'm not sure how it coexists with *Lexmark*; but more to the point, I already found that I had subject matter jurisdiction.  It was just a question of whether the parties had the ability to bring particular causes of action.

In a previous case of mine, I found that dismissals for lack of standing were dismissals without prejudice.  The case -- I will cite it to you -- is *New York Bankers Ass'n v. City of New York*, 2014 WL 4435427.  So I am finding that the dismissal is without prejudice here.

I appreciate Wiley's arguments that the case has been litigated for several years, and I also see that there are cases dismissing without prejudice on the theory that it would allow someone to file in a court of competent jurisdiction like

1   a state court.

2   I haven't found, however, that there can be no claim
3   under the Copyright Act, but rather that the claim could not be
4   made by DRK on the facts presented to me.  So, I don't feel
5   that it's appropriate to foreclose legal or beneficial owners
6   of actual exclusive rights from bringing litigation.  So, the
7   dismissal is without prejudice.  As a practical matter, it may
8   make no difference; but given my prior decision, I felt it
9   appropriate to actually be consistent.

10   So I hope that that is not too summary an analysis.
11   That is my view of things, so, yes, I changed one thing or I've
12   granted reconsideration in part and not in other parts.  I
13   would be interested if the parties think that I need to do more
14   than simply issue an order saying just that.

15   Do you want me now to discuss instances that are
16   affected by the prior decision?  Do you want confer among
17   yourselves and decide if there is particular verbiage about
18   particular instances that you want me to consider including in
19   such an order?  Because I would be interested.  Also, if this
20   requires you to re-cast the order that you submitted to me and
21   that prompted this discussion today, certainly I will give you
22   the time you need for that.

23   MR. HARMON:  I think that is the more prudent approach
24   from our side of this.

25   THE COURT:  OK.

1             MR. HARMON:  Our apologies for not finding the case
2     that your Honor cited to us this morning.
3             THE COURT:  You are not obligated -- are you talking
4     my own case?
5             MR. HARMON:  Yes.
6             THE COURT:  You're not obligated to look at my
7     decisions.
8             MR. HARMON:  I understand that, but it surely would
9     have been helpful.
10            THE COURT:  Can I know by the end of next week, the
11    13th?
12            MR. HARMON:  Sure.
13            MR. PENCHINA:  Yes, absolutely.
14            THE COURT:  OK.  Again, I'm not trying to --
15    obviously, everyone has their interests in having the best
16    record for appeal.  My interest is slightly different from both
17    of yours, which is I just want my thoughts to be adequately and
18    correctly articulated to the Circuit so that they understand
19    what I'm doing.  I'm not trying to, again, be strategic because
20    I have no horse in this race.  But you will let me know if
21    there is anything in your prior motions that I've left out.  I
22    believe I've now addressed the issues that were raised in the
23    reconsideration motion.  If you see something there is not, you
24    will let me know and we can do it telephonically.  But to my
25    mind, that is the end of the inquiry from my perspective.  I

1   would invite you, and, indeed, encourage you to get the
2   transcript.  Someone will need it at some point.
3              I thank you again for coming in.  If there is anything
4   else you want to talk about today, we can.
5              MR. HARMON:  Just a point of interest.  I am arguing
6   this very issue in the Ninth Circuit next Thursday.
7              THE COURT:  In which case?
8              MR. HARMON:  *Minden v. Wiley*.  It's a very interesting
9   argument also.  I think we are going to have some feedback from
10  the panel.
11             THE COURT:  Will there be a transcript of the
12  argument?
13             MR. HARMON:  Not only that, it may even be streamed;
14  but if it is not streamed the oral argument is available on
15  audio -- I have been to the Ninth Circuit before -- about 30
16  days after.
17             THE COURT:  I am interested in hearing because you
18  guys have now made me interested in this topic matter.  I want
19  to at least know how it's going.
20             Anything else?
21             MR. PENCHINA:  Just one point of clarification on our
22  understanding.  So as I understand the procedure or the process
23  where we are now, we will confer; your Honor will issue an
24  order that addresses the points that were discussed today.
25             THE COURT:  Only in a very summary fashion, yes.

F34QwilC

1       MR. PENCHINA:  Understood.  Not a full-blown opinion
2  but an order.
3       THE COURT:  Yes.
4       MR. PENCHINA:  Then we will need some additional
5  order, because it's without prejudice, so as to finalize the
6  district court proceeding so they can take their appeal.
7       THE COURT:  That is correct.  That is my understanding
8  as well.
9       MR. PENCHINA:  Thank you.
10       THE COURT:  Thank you both.  Off the record, please.
11       (Adjourned)